**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 26-mj-124** |
| **v.** | : | |
| | : | |
| **DANIEL PATRICK HUGHES** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' MEMORANDUM IN**
**SUPPORT OF PRE-TRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its motion that Daniel Patrick Hughes (hereafter, the "Defendant" or "Hughes") be detained pending trial, pursuant to 18 U.S.C. § 3142(f)(1)(A) (crime of violence). Mr. Hughes is charged with Distribution of Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and there is no condition or combination of conditions that will reasonably assure the safety of children in the community – both in the physical world and online- if Mr. Hughes is released. As detailed below, an analysis of the factors set forth in 18 U.S.C. § 3142(g) leads to the conclusion that detention is the only way to protect children in the community and to ensure the defendant's future appearance.

Pursuant to 18 U.S.C. § 3143(e)(3)(E), there is a rebuttable presumption in favor of detention. For reasons discussed below, the United States respectfully submits that the factors weigh in favor of detention, and that the Defendant cannot overcome the presumption. Accordingly, and because the Defendant poses a risk to community safety that cannot be sufficiently mitigated, the United States respectfully requests that he remain detained pending trial.

I.    **Factual Background**

On June 30, 2026, an investigative analyst ("IA") with the United States Secret Service Criminal Investigation Division was acting in an online undercover (UC) capacity operating out of an office in Washington D.C.  The UC was monitoring dating applications, including "Hush," which is known to be used by individuals engaged or interested in the sexual exploitation of children. On the same day, Hush user "violet_snowmobiling" (later determined as HUGHES) responded to a post by UC persona "maroon_bottom-line" (controlled and utilized by the IA).The UC's post stated that she would be in town for the Fourth of July with her five-year-old niece. HUGHES sent the UC a direct message, asking about the ages of the UC and her niece.  The UC replied, "I'm 25 and my niece is 5."

HUGHES subsequently expressed interest in meeting both the UC and the minor, stating he was "always up for fun with cute girls and [was] great with kids."  When the UC asked, "how great with kids," HUGHES replied, "depending on what you mean babe, my answer is the same. I'm great (wink face emoji)."  The UC clarified, "I mean in the way of openmindedness," to which HUGHES responded, "I'm very open minded. What do you have in mind?"  The UC stated, "my niece and I are open to anything you'd like."  HUGHES asked about the minor's experience.  The UC responded, "she is very experienced… you name it and I'll tell you if she's done it or not." HUGHES then stated, "well I'd love if I got to rub her little pussy while you and I made out," and "then maybe she can suck my dick for a little bit."  The UC said, "she's very accustomed to that… anything else you'd like to do… you're very hot." HUGHES replied, "tbh I'd penetrate her," and then asked, "has she taken on inside of her before?"  HUGHES then requested to move the conversation to Snapchat, and gave his username "kxbeebe."

On June 30, 2026, at approximately 10:37 PM, HUGHES initiated contact with the UC on Snapchat.  At approximately 10:37pm, HUGHES sent a live image of himself, revealing his face

and background details.  HUGHES then continued to communicate with the UC on Snapchat and discussed in detail, his desire to meet with the UC and her purported niece in order to have sex with the child. For example, on July 1, 2026, at 1:32 pm, HUGHES told the UC, "When I am with her, I will definitely go at her pace. I would love to end up, penetrating her, but I will start with some kissing and touching and go with her flow. I want her to be comfortable and enjoying it as well as you!"  HUGHES asked the UC about the purported child's prior experience with sex.   For example, HUGHES asked the UC, "How did she take it when she was penetrated? Did it fit? I'm pretty big so I don't want to hurt her but I'd love to try her pussy and her ass. And I'd LOVE her to suck on me (heart eyes emoji)[.]"

During the Snapchat conversation, the UC and HUGHES determined that they would meet at a bar in Washington DC while the UC's minor niece remained at an Airbnb.  They agreed that after the meeting, the UC and HUGHES would return to the Airbnb so that HUGHES could engage in sexual activity with the minor niece. Below is an excerpt of this conversation:

> 7/1/26 0231 PM- UC: Are you serious about meeting on the 6th? I just want to make sure we leave open time if you're serious its ok if ur not bur just for planning purposes.
>
> 7/1/26 0234 PM- HUGHES: No I'm def down!! Assume meeting at your Airbnb? Or do you wanna meet in public nearby then walk back? I'd also love to call before and get to know you and her :)

HUGHES then described in detail what he wanted to do with the child when they met.  Between July 1st and July 2nd of 2026, Snapchat messages between the UC and the HUGHES included, in relevant part:

| Sender | Message | Date and Time |
|---|---|---|
| UC | Mmmm let me know what you're gonna do Monday when we see you I want to picture it now (face emoji) | 07/01/26 8:07 PM EDT |

| HUGHES | **I'm definitely gonna fuck her pussy and her ass (devil face emoji)** | **07/01/26 8:16 PM EDT** |
|---|---|---|
| UC | (Sweating face emoji) you are unrealll. Whats the first thing you're gonna do when we walk into the apartment? | 07/01/26 8:21 PM EDT |
| HUGHES | **Probably smack her ass and laugh and ask if she's ready to have some fun. I will ask her if she likes to dance and then maybe pick a song that she can strip tease me to.** | **07/01/26 8:24 PM EDT** |
| UC | What would you like to start with after you warm her up? | 07/02/26 10:33 AM EDT |
| HUGHES | **After we've kissed and touched I'd start rubbing her pussy and working my finger into her, until I was fingering her. I'd have her sit on my lap while I do that and she can play with my dick. After a bit, I'd want her to suck my dick And then I'd lube her up and slowly penetrate her pussy and fuck her for a little, then I'd penetrate her ass and fuck her for a little. When I am ready to cum I'll pullout and I'll cum all over her face and her naked body and then finish with a little cream pie in her pussy.** | **07/02/26 10:42 AM EDT** |

During that conversation, the UC stated that she no longer wanted to participate but would just watch the Defendant with her niece, to which the Defendant replied, "I'm okay with that [h]aha". The conversation additionally included HUGHES' description of a prior sexual encounter with a mom and a ten-year-old girl.

| Sender | Message | Date and Time |
|---|---|---|
| UC | When you played with the 10-year-old did u also play with her mom or something too or just her | 07/01/26 3:32 PM EDT |
| HUGHES | **I fucked her mom yea. I'm gonna go jerk off fuck I'm so horny.** | **07/01/26 3:33 PM EDT** |
| UC | So hot it better be to us. Did u also meet them on hush or like did u already know them? | 07/01/26 3:33 PM EDT |

| HUGHES | I knew the mom and had been fucking her. One day her daughter walked in and moms reaction wasn't what I thought it'd b | 07/01/26 3:33 PM EDT |
|---|---|---|
| UC | oh okay thts cool | 07/02/26 3:33 PM EDT |
| HUGHES | So o kinda used that to say "hey I don't Mind her" And it went from there. | 07/02/26 3:33 PM EDT |

During their conversation on Snapchat, the UC indicated to HUGHES that her minor niece liked to see what was going to happen to her to make her feel more comfortable. Hughes asked if he could send adult pornography, but the UC stated she liked to see something closer to her age. HUGHES subsequently sent a video file which was flagged by Snapchat as "potentially matching known illegal or harmful content."

On July 2, 2026, at 8:08 am, HUGHES reengaged the UC on his Hush account, saying, "hey snap locked me out and banned my account" and "it wasn't long after I sent you what you asked for[.]" HUGHES offered to continue the conversation on Telegram and provided his username, "kxbeebe."  The UC then messaged HUGHES on his Telegram account. During their conversation on Telegram, and in later video chats, HUGHES stated he had sent a "yng girl video" to the UC on Snap Chat and further described the child in the video as "maybe a bit older like 8[.]"

HUGHES then sent a file containing Child Sexual Abuse Material ("CSAM") on Telegram, which depicted a naked prepubescent girl, lying on her back on what appears to be a couch while an adult man is vaginally penetrating her with his erect penis.  HUGHES further stated to the UC that he could "get more" CSAM videos but he said he was "not gonna send unless [he] got something in return."  HUGHES explained that he was just "cautious" and stated again that he was "not gonna send videos of stuff without getting something back because then it's illegal both ways." After sending the CSAM video, the defendant assured UC that he wanted met up with the purported five-year-old and sent a video of himself masturbating and told the UC to show the video

to her niece.  In the video, the defendant is maturating his erect penis with his hands and repeating the name "Sophie"- which is the name of the purported five-year-old girl that he planned to sexually abuse.

Finally, on July 4th, 2026, Hughes indicated that if he had children of his own, he would sexually abuse them.

| Sender | Message | Date and Time |
|---|---|---|
| UC | Fuck yea would u ever do ur own if u had any? | 07/04/26 12:20 PM EDT |
| **HUGHES** | **Haha probably (monkey covering eyes emoji)** | **07/04/26 12:21 PM EDT** |
| UC | Heheh how young would you start them? (Sweating face emoji) | 07/04/26 12:26 PM EDT |
| **HUGHES** | **Fuck, maybe 2 or 3** | **07/04/26 12:37 PM EDT** |

This conversation came after law enforcement observed a toddler-aged child with HUGHES and HUGHES' spouse on July 3rd, 2026.

On July 6, 2026, HUGHES made plans with the UC to meet at a bar in Washington D.C. The UC and HUGHES determined they would have a drink and then travel together to the UC's Airbnb where HUGHES would engage in sexual activity with the UC's 5-year-old niece. At approximately 4:16 pm, HUGHES asked, "what bar?"  The UC told HUGHES the name of the bar, however HUGHES did not show up to the location and subsequently blocked the UC on Telegram. At 11:29 pm on July 6, 2026, HUGHES unblocked the UC on Telegram and restarted their conversation.  HUGHES said he had gotten "spooked" by the conversation and said he started to suspect it "is some Chris Hanson[1] shit[.]" HUGHES then continued to chat with the UC on Telegram and asked the UC for photos of her niece to prove she was real. HUGHES continued to

---

[1] Journalist Chris Hansen previously hosted a TV program, "To Catch a Predator," which revolved around catching potential Internet predators interested in sex with minors using a sting operation.

attempt to communicate with the UC as late as July 22, 2026. HUGHES sent the UC seven messages on Telegram without a response from the UC.  His last communication was an image sent on Telegram, depicting the "Say Cheese" restaurant in Georgetown, which the UC had previously said was the purported child's favorite.

Based on information obtained from law enforcement databases, law enforcement was able to identify HUGHES, with a date of birth in 1991, and an address of XXXX N Chesterbrook Rd, Arlington, VA, 22207, as the individual depicted in the photograph that HUGHES sent to the UC. A query of law enforcement databases also revealed HUGHES has a 2020 Chevrolet Silverado pickup truck with license plate BNDTXXX, phone number (xxx) xxx-4032; Virginia driver's license A62711XXX.

According to records obtained from Snapchat, HUGHES' Snapchat account, kxbeebe (user ID: 74584b44-1663-432b-b2c1-646b1588e144), is associated with TextNow[2] phone number 1910XXX8738. The records also showed that on July 3, 2026, at approximately 11:03:23 UTC, HUGHES' account was flagged for uploading an image or video identified as "potentially matching known illegal or harmful content[.]"

 Snapchat records showed that a Verizon Fios IP (108.28.26.41) was also associated with the account. According to records obtained from Verizon, during the relevant timeframe, the IP address was registered to:

- Customer Name: Daniel Hughes
- Account Address: XXXX CHESTERBROOK RD, ARLINGTON, VA 22207
- Daytime Telephone 703XXX4032
- Email Address: daniel.hughesXX91@gmail.com
- Vision Customer Id: 358274211

---

[2] Text Now is is a Voice over Internet Protocol (VoIP) platform which is often used for text verification to sign up for electronic services platforms.

**APPLICABLE LEGAL STANDARD**

The defendant is charged with Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), a crime of violence.  18 U.S.C. § 3156(c) defines a "crime of violence" to include violations of Title 110, under which § 2252(a)(2) falls.  Further, § 2252(a)(2) gives rise to a rebuttable presumption of detention pursuant to 18 U.S.C. § 3142(e)(3)(E), where it is to be *presumed* that no combination of conditions will protect the community or assure the defendant's return.  § 3142(e)(3)(E).  This presumption "operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption."  *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (observing that the presumptions in § 3142(e) "are rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released"); *see also United States v. Hir,* 517 F.3d 1081, 1086 (9th Cir. 2008).  Even if the defendant does not pose a flight risk, danger to the community by itself is a sufficient reason to order pretrial detention.  *United States v. Salerno*, 481 U.S. 739, 755 (1987).

In determining whether the defendant has overcome that presumption, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  *See* 18 U.S.C. § 3142(g).  Even when the defendant has offered evidence to rebut the presumption of dangerousness, the presumption remains a factor in the court's analysis of the § 3142(g) factors.  *See United States v. Dominguez*, 783 F.2d 702, 707 (7th

Cir. 1983) ("Use of that word [rebutted] in this context is somewhat misleading because the rebutted presumption is not erased.  Instead, it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."). As the Sixth Circuit has observed, "[t]he presumption [of dangerousness] remains as a factor because it is not simply an evidentiary tool designed for the courts.  Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010) ("To rebut the presumption, therefore, a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm.'").

## ANALYSIS

Mr. Hughes poses a significant danger to children in the community – including children who are being preyed on over the internet as well as children in the physical world – and there are no conditions short of detention that will protect children from his predation.  For the reasons addressed below, the factors outline in 18 U.S.C. § 3142(g) weigh in favor of detention and Mr. Hughes cannot rebut the presumption that he shall remain detained.

### A.      Nature and Circumstances of the Offense Charged

Mr. Hughes' conduct in this case poses a significant risk to children in the physical and online world.  Mr. Hughes not only distributed CSAM to an undercover officer but did so in the context of planning to meet up with the UC in order to sexually abuse the UC's purported five-year-old niece, and sent the material with the stated intention of having the UC show the video to the child in order to groom her for the planned sexual encounter.  Although Mr. Hughes never ultimately went through with his plans to meet up with the UC, he engaged in a protracted conversation with the UC over the course of several days and repeatedly expressed his desire to

have sex with the child and described in graphic detail, the sexual abuse that he planned to engage in with the child.

As Chief Judge Boasberg noted in considering the government's appeal of the magistrate court's release order in *United States v. Reid*, 25-cr-311 (JEB), it is important to consider where the defendant's behavior falls on the spectrum of conduct commonly seen in child exploitation cases. This spectrum of conduct spans a range of conduct including the private possession of small amounts of child pornography, the distribution of large amounts of CSAM to large numbers of people or in large on-line forums, as well as the use of CSAM to groom children for sexual abuse and the hands-on sexual abuse of children in the physical world.  Mr. Hughes' conduct falls in the middle of this spectrum.  On the one hand, the government's evidence, at this point, includes only one instance of distribution of child pornography.  However, this single act of distribution must be considered in the context of lengthy chats between the defendant and the UC that includes plans to sexually abuse a five year old, and the defendant's intention that the CSAM he distributed by shown to the UC's  purported five-year-old niece in order to groom her for sexual abuse.

The United States respectfully submits that the nature and circumstances of the offense weigh in favor of detention.  Mr. Hughes' conduct demonstrates that he poses a danger both to children in the physical world, as well as to children who are suffering the aftermath of having images of their sexual abuse distributed online.  On a broad level, children depicted in sexually explicit images and videos are victimized at the time the images were created, and they are re-victimized each time an individual, like the defendant, views the images for their own sexual gratification. As explained by the Sixth Circuit in a child pornography case:

> ...we have numerous victims in a case like this, not one victim. Every image of a child, every image of a non-adult engaged in any type of sexual activity or any type of pose

without clothing or any type of exploitation constitutes an additional case of victimizing a child. Without a demand for that type of information and that type of viewing from persons like this defendant, we don't know how many child abuse cases we could prevent. And as long as there is a demand to purchase images of child pornography, there is going to be an unending stream of child abuse of…children who are forced into these roles.

...every image has a child who has been exploited and abused, and that is the concern I have. It is the concern that I have when people are engaged in serially doing this, the effect it has on children throughout the world and the effect it has on their future lives.

*See United States v. Miller*, 665 F.3d 114, 121-122 (6th Cir. 2011) (quoting the district court) (rejecting an attack on the child pornography sentencing guidelines and highlighting the grave harm caused to the victims depicted in child pornography images and the evidence that traffickers and possessors of child pornography are the impetus for the creation of more sexual abuse of minors).

Indeed, Congress has recognized the serious nature of crimes involving child pornography and the long-term damage that these crimes can cause, by specifying that these crimes carry a rebuttable presumption of detention. § 3142(e)(3)(E). As detailed above, the Defendant distributed CSAM of a prepubescent child for the purpose of grooming a five-year-old. The Defendant expected the CSAM to be shown to the child in order to show her what he planned to do with her when he saw the child in real life. Mr. Hughes described in graphic detail how he planned to sexually abuse the little girl: stating that he would, "fuck her pussy and her ass," have the girl perform oral sex on him, and perform a "strip tease" for him, so that he could "cum all over her face." The Defendant attempted to send a CSAM video to the UC via a Snapchat message, but his account was immediately shut down. Instead of being deterred by his, Mr. Hughes reached back out to the UC on the Hush application and suggested that they continue their chat on a more secure

application like Telegram.  He then sent a CSAM video depicting a prepubescent girl that the being

vaginally penetrated by an adult man. After sending the video, the defendant assured the UC that

he wanted met up with the purported five-year-old and sent a video of himself masturbating and

told the UC to show the video to her niece.  In the video, the defendant can be seen masturbating

his erect penis with his hands and repeating the name "Sophie"- which is the name of the purported

five-year-old girl that he planned to sexually abuse.  The nature and circumstances of this offense

weigh in favor of detention, as because they demonstrate that no combination of conditions would

protect children from the danger posed by the defendant.

> B.      **The Weight of the Evidence Against Defendant**

The United States also respectfully submits that the strength of the evidence against the

Defendant similarly weighs in favor of detention.  Where, as here, "the government possesses

overwhelming evidence that the Defendant is guilty of the crime charged—and the nature of the

charged offense involves a danger to the community—then the second factor will help meet the

government's burden of persuasion."  *United States v. Taylor*, 289 F. Supp. 3d 55, 66 (D.D.C.

2018).

The United States is in possession of the Hush, Snapchat, and Telegram messages between

the Defendant and the UC, which reflect his attempted distribution of CSAM over Snapchat, and

his successful distribution over Telegram on July 2nd, 2026.  Moreover, the context of the

conversations make clear that the Defendant knowingly distributed CSAM for the apparent

purpose of grooming a five-year-old girl for sexual abuse.

> C.      **The Defendant's History and Characteristics**

The United States respectfully submits that the third factor concerning the Defendant's

history and characteristics also weighs in favor of detention.  Despite the Defendant's lack of any

criminal history, he appears to have been highly motivated to seek out children for sexual purposes, and unable or unwilling to restrain his impulses to do so. The Defendant here reached out the UC by answering her solicitation that mentioned being in town with her five-year-old niece.  He then engaged in a protracted discussion with the UC, over multiple platforms, discussing in graphic detail how he wanted to sexually abuse a five-year-old.  He made plans to meet the child, sent CSAM to groom the child, and sent a video of himself masturbating while saying the child's name that he asked to be given to the child.  He was not deterred when his Snapchat account was terminated.  He was not deterred when his own instincts told him to be "cautious."  After getting cold feet about the plan to meet the UC and the child and blocking the UC on Telegram, the defendant again reached out to the UC and repeatedly tried to re-engage with her, up until the day of his arrest. In addition, the Defendant admitted to the UC that he had previously sexually abused a ten-year-old girl whose mother was involved in a sexual relationship with the Defendant.  Put simply, his lack of significant criminal history and any other mitigating circumstances are eclipsed, or at the very least offset, by the Defendant's conduct here. His conduct shows a dangerous disregard for the law and a compulsive interest in sexually abusing children, even while he understands that it is wrong and that he could be caught.

D.      **Danger to the Community**

Finally, the sexual exploitation of children presents a serious danger to the community, which results in severe mental, emotional, and physical trauma to the countless children who are victimized by offenders like the defendant and others with a demonstrated sexual interest in children.   It is this type of harm that led Congress to create the statutory presumption of detention in these cases.

That child pornography offenses are serious is a fact noted by the Supreme Court. At least as early as the landmark decision, *New York v. Ferber*, 458 U.S. 747 (1982), the Supreme Court referenced numerous research materials detailing the harm to children as a result of the production and trafficking of child pornography.

> [P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography."

Shouvlin, Preventing the Sexual Exploitation of Children: A Model Act, 17 Wake Forest L.Rev. 535, 545 (1981). *See also* Child Exploitation 292 ("[I]t is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions"); Note, Protection of Children from Use in Pornography: Toward Constitutional and Enforceable Legislation, 12 U.Mich.J. Law Reform 295, 301(1979)(interview with child psychiatrist) ("The victim's knowledge of publication of the visual material increases the emotional and psychic harm suffered by the child"). 4 58 U.S. 758, n.9.

Moreover, as the Eastern District of New York has found:

> ...the issue is not only defendant's potential abuse of children and his interaction with children if on bail, but also his ability, if he is released on bail, to attempt to possess additional child pornography, or to communicate and interact with (via email, internet, or phone) others involved in the possession, sale, and distribution of child pornography or other sexual abuse of children, which would also create a clear danger by facilitating the criminal and dangerous exploitation of children by other individuals.

*United States v. Reiner*, 468 F.Supp.2d 393, 397 (E.D.N.Y. 2006).  The *Reiner* court further found that there were no conditions in that case that could reasonably assure the safety of the community "[i]n this day and age, with devices such as cellphones, Blackberries, and laptops..."  *Id.* at 399; *see also United States v. Blankenship*, 2008 WL 1925137 (S.D.W.Va. April 29, 2008) (unpublished) (noting the ease of accessing the internet by means of various devices and stating "[t]he Court finds that the evidence clearly and convincingly establishes that, confined to his home and electronically monitored, defendant would not be prevented from obtaining the means to access the internet and attempting again to obtain child pornography and in this poses a danger to children and the community"); *United States v. Doyle,* 2007 WL 1097844, *1 (W.D.Va. 2007)(finding danger of future offenses "especially considering that pornographic images of children are widely available on the internet and can be easily accessed by a personal computer"), conviction rev'd on other grounds, 650 F.3d 460 (2011).  The risk the defendant poses to children in the community is significant and weighs heavily in favor of detention.

The nature and seriousness of the danger to any person or the community posed by the Defendant's release points squarely towards detention.  That the Defendant poses a danger to the community is presumed by statute, *see* 18 U.S.C. § 3142(e)(3)(E), and should be factored into the Court's analysis, even if contrary evidence is presented.  *See Ali*, 793 F. Supp. 2d at 388.  And as discussed above, the dangers inherent in the Defendant's conduct cannot be understated—the distribution of child pornography results in severe mental, emotional, and physical trauma to the children victimized by offenders, such as the Defendant, who seek sexual gratification, in part, through viewing and sharing of images depicting the sexual abuse of children.  It is precisely "[t]hese significant harms and dangers [that] animated the Congress to create the statutory presumption of detention in these cases." *Galarza*, 2019 WL 2028710, at *7.  This danger of the

Defendant's conduct here, goes beyond the danger inherent in a typical act of Distribution of Child Pornography, because here the act was undertaken for the purpose of grooming and child in the context of protracted and persistent attempt on the part of the Defendant to engage with another person who he believed had access to a child, and who was offering to allow the Defendant to sexually abuse that child.

Release conditions cannot sufficiently mitigate this danger and prevent the Defendant from covertly reengaging in the offense conduct. Given "the ubiquity of internet-capable devices[,]" the challenges in fashioning release conditions to mitigate the danger the Defendant's release presents are "insurmountable[.]" *See United States v. Dhavale*, 2020 WL 1935544, at *5 (D.D.C. Apr. 21, 2020). This is particularly true in a case such as this, where it is clear the Defendant appears to have been highly motivated in his efforts to access children, and seems to have access to CSAM. Moreover, given the Defendant's demonstrated motivation to access young children, his apparent inability to restrain himself, and the fact that the Defendant was engaging in all of this behavior with a wife and two-year-old child at home, the Court should have no confidence that the Defendant is capable of conforming his conduct with release conditions.

**IV. Conclusion**

For the foregoing reasons, the United States respectfully requests that the Court issue an Order granting its Motion that Daniel Patrick Hughes be held without bond pending trial.

Respectfully submitted,
Jeanine Ferris Pirro
UNITED STATES ATTORNEY


By: /s/_____
Karen Shinskie
Assistant U.S. Attorney
United States Attorney's Office

601 D Street NW
Washington, D.C. 20530
(202) 730-6878
Karen.shinskie@usdoj.gov