**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **26-mj-000124** |
| | ) | |
| v. | ) | **Tuesday July 28, 2026** |
| | ) | |
| **DANIEL PATRICK HUGHES** | ) | |
| | ) | |

### <u>DEFENDANT'S RESPONSE AND MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE</u>

Defendant Daniel Hughes, through the undersigned attorney, respectfully requests that this Court release him on bond pursuant to the Bail Reform Act, 18 U.S.C. § 3142, and *United States v. Salerno*, 481 U.S. 739 (1987). Mr. Hughes has (1) significant connections to the community, (2) zero criminal history, and (3) no ability to flee. The government has failed to set forth sufficient facts to find that Mr. Hughes is either a danger to the community or a serious risk of flight. Mr. Hughes asks the Court to find that there are conditions that will reasonably ensure his appearance and ensure the safety of the community and to release him under those conditions.

Specifically, the following conditions of release under § 3142(c)(1)(B), and any other conditions the Court deems necessary, will reasonably assure Mr. Hughes' appearance in court and the safety of the community. These conditions are modeled after those imposed in *United States v. Urena*, in which a defendant with an identical charge and similar facts was released to home confinement.  Order Setting Conditions of Release, *Urena,* No. 1:25-cr-344, doc. 11 (D.D.C filed Oct. 29, 2025).

- Turn over any passport and agree not to procure another passport;

- Home incarceration with electronic monitoring at the home of his parents in Farmville, Virginia in Prince Edward County, Virginia in the Eastern District of Virginia

1

- Third party custodian – his father, who is retired and can be home all day

- No use of electronic devices or the internet in any form, – all contact with legal counsel will be by telephone or in-person with advance permission by pretrial services to travel to attorney meetings;

   o Access of electronic devices will be prevented and monitored by the third-party custodian;

- Remain at home unless for verified court, pretrial services, legal, or medical appointments, which must be approved in advance by pretrial services;

- No contact with any minor children but for his eighteen-month-old son and then only with approval and supervision of the son's mother

- Report on a "regular basis" to PTS or some other agency as directed, *id*. § 3142(c)(1)(B)(vi);

- Refrain from possessing "a firearm, destructive device, or other dangerous weapon," *id*. § 3142(c)(1)(B)(viii);

- Refrain from "excessive use of alcohol," *id*. § 3142(c)(1)(B)(ix); and

- Refrain from "any use of a narcotic drug or other controlled substance . . . without a prescription," *id*. § 3142(c)(1)(B)(ix).

## I.    Background

Mr. Hughes was arrested on July 23, 2026 pursuant to a criminal complaint charging him with distribution of child pornography. The complaint concerns a conversation between Mr. Hughes and an undercover police officer (UC) that began on June 30, 2026 on an online messaging platform.[1] During the conversation, Mr. Hughes expressed interest in meeting the UC and her fictitious niece. On July 1, Mr. Hughes agreed to the UC's suggestion to meet at a bar on July 6th and then return to an Airbnb to meet the fictitious niece. The UC asked Mr. Hughes to show the fictitious niece what might happen at the meeting. Mr. Hughes asked to send adult pornography

---

[1] The app, Hush, is commonly used by individuals for a variety of connections and communications, the vast majority of which are non-criminal in nature. The app, not the users themselves, independently assigns user names to users. Internet research shows that the app is also known for being buggy, with multiple pop-up ads, and crashing.

and the UC requested something depicting minors instead. Mr. Hughes sent a message which was flagged as harmful and immediately deleted by the messaging service they were using. During the course of the communications, the UC asked Mr. Hughes to bring a gift for the fictitious child – specifically suggesting a certain type of stuffed animal (Bluey) and/or a certain type of candy bar (Kit Kat).

Several days later, the UC requested that Mr. Hughes resend the video on another platform.[2] Mr. Hughes sent a 1 minute and 59 second video that appears to depict an adult and a minor engaged in sexual activity.[3]  On July 6th at 4:16 pm, Mr. Hughes asked the UC where she wanted to meet up. The UC responded with a location. Mr. Hughes blocked the UC and did not visit the bar. Later, Mr. Hughes resumed conversations with the UC and planned for a meetup on another date. They agreed to meet on July 21.[4] Mr. Hughes did not appear. Mr. Hughes continued to seek electronic conversation, sending messages to the UC on July 22. On July 23, law enforcement initiated a traffic stop and arrested Mr. Hughes in Virginia.

Law enforcement searched both Mr. Hughes' car and his home. They did not recover any item that appeared to be a gift for the fictitious child. The UC presented a fictitious avatar and fictitious child in communications with Mr. Hughes. Mr. Hughes himself presented a fictitious

---

[2] This request for re-send is referenced in the Affidavit in Support of Criminal Complaint and Arrest Warrant at 9, paragraph 20: "The UC asked HUGHES to resend the CSAM video that had gotten his Snapchat account banned. On July 4, 2026, at approximately 11:58 A.M., the UC told HUGHES, 'I can't wait to see the vids (sweating face emoji and heart eyes emoji). She's gonna love you and take it so well[.]' At approximately 12:01 P.M., HUGHES sent" the alleged CSAM video.

[3] The criminal complaint against Mr. Hughes describes the video; defense counsel has yet to review the message to confirm it constitutes CSAM. For purposes of this hearing, the defense does not dispute that the video constitutes CSAM. The video does not depict Mr. Hughes himself.

[4] The UC's suggestion of a location to meet on July 21 and Mr. Hughes' agreement to meet are reflected in their electronic messages. Mr. Hughes did not appear.

avatar in his communications with the UC – including name, residence, and prior experiences.[5]

Mr. Hughes sent one video of CSAM. He never traveled to meet the UC. The evidence is in equipoise whether he ever intended to meet, versus limited his engagement with the UC to inappropriate electronic communications. He is currently held on the basis of the single above-referenced video.

## II.     Legal Standard

Consistent with the presumption of innocence and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 provides that a defendant should be released pending trial on personal recognizance or "subject to the *least restrictive* further conditions, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(b) and (c)(1)(B) (emphasis added). The U.S. Supreme Court has explained: "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); *see United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is relatively difficult to impose."). "Nothing in this section shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j). As a rule, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.). "It is only a 'limited group of offenders' who should be [detained] pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. N. 98-225 at 7 (1984),

---

[5] The texted description cited by the government of a prior sexual contact among Mr. Hughes, a mother, and the mother's minor child who just happened to walk in on Mr. Hughes and the adult sexual partner having sex and then joining them in having sex is obviously fictitious.

*reprinted in* 1984 U.S.C.C.A.N. 3182, 3189). Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Motamedi*, 767 F.2d at 1405.

Under 18 U.S.C. § 3142(e)(3)(E) a rebuttable presumption exists that no condition or combination of conditions will reasonably assure the appearance of the person and the safety of the community. Where the presumption applies, the Bail Reform Act imposes a "burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alitishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). Such a burden is "not heavy" and only requires the production of "some evidence." *United States v. Bustamante-Conchas*, 557 Fed. Appx. 803, 806 (10th Cir. 2014).

Even in cases where a rebuttable presumption applies, it is ultimately the government's burden to demonstrate either by a preponderance of the evidence that the defendant is more likely than not to flee, or by clear and convincing evidence that preventative detention is necessary to ensure the safety of the community. *See United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985) (Breyer, J.). Under the Bail Reform Act, the Court must consider the following factors when determining whether the government has presented sufficient evidence for Mr. Hughes to be detained: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the history and characteristics of the person charged; and (4) the nature and seriousness of the danger posed by the person to any person in the community if he is released. 18 U.S.C. § 3142(g).

Finally, as relevant here, pursuant to the Bail Reform Act, if the government moves for detention alleging that there is a "serious risk" that the person will flee and the Court finds as such, a judicial officer may then determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community. *See* 18 U.S.C. § 3142(f)(2)(A). "A

5

determination that an individual is a serious risk of flight must be supported by a preponderance of the evidence." *United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019) (citing *United States v. Vortis*, 785 F.2d 327, 328-29 (D.C. Cir. 1986) (per curiam)).

### III.    Mr. Hughes Can Rebut the Presumption of Detention with Credible Evidence

Mr. Hughes can rebut the presumption of detention with "some credible evidence" that there are conditions which would reasonably assure his appearance and the safety of the community. First, Mr. Hughes has strong ties to the community. Mr. Hughes was born in Northern Virginia and graduated from high school in Northern Virginia. He attended college in Virginia. After college, he has worked in this area for the past decade. Mr. Hughes lives in Arlington, Virginia where he has a wife, child (an eighteen-month-old son), and a job he has held for 7 years. He believes he has a compelling story to present to the court, and he has no intent or desire to flee and remove himself from his family. Mr. Hughes also has zero criminal history.

The foregoing facts rebut the presumption of detention in this case.

### IV.    The Government Cannot Meet Its Burden to Demonstrate that Mr. Hughes is a Flight Risk or Danger to the Community

The D.C. Circuit recently reiterated the clear and convincing standard that the government must meet to justify detaining a defendant as a danger to the community:

> The crux of the constitutional justification for preventive detention under the Bail Reform Act is that '[w]hen the Government proves by clear and convincing evidence that *an arrestee presents an identified and articulable threat to an individual or the community*, . . . a court may disable the arrestee from executing that threat. . . . Therefore, to order a defendant preventatively detained, a court must identify an articulable threat posed by the defendant to an individual or the community.

*United States v. Munchel*, 991 F.3d 1273, 1282-83 (D.C. Cir. 2021) (quoting *Salerno*, 481 U.S. at 751) (emphasis added); *see United States v. Patriarca*, 948 F.2d 789, 792 (1st Cir. 1991) (explaining that defendant must pose actual danger to community, not that defendant in theory

6

poses danger to the community). The government has not and cannot meet its burden here and Mr. Hughes should be released under conditions. The Bail Reform Act factors demonstrate that there are conditions or combinations of conditions that can reasonably assure Mr. Hughes' appearance at trial and protect the public.

There is also not a "serious risk that [he] will flee" the jurisdiction under § 3142(f)(2)(A). Ordinary "risk of flight" is not a factor in § 3142(f). There is some risk of flight in every criminal case; "serious risk" of flight means something more.

According to a basic canon of statutory interpretation, the term "*serious* risk" means that the risk must be more significant or extreme than an ordinary risk. *See, e.g.*, *Corley v. United States*, 556 U.S. 303, 314 (2009); *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 698 (1995) (noting interpretation of statute should be reluctant to treat statutory terms as surplusage). Indeed, Congress has prescribed "serious risk of flight" and the risk of non-appearance as separate requirements. *United States v. White*, No. 3:21-MJ-04070, 2021 WL 2155441, at *8 (M.D. Tenn. May 27, 2021) (citing *Gibson*, 384 F. Supp. 3d at 965) ("Congress settled on very different language when describing the analysis courts must undertake once a detention hearing goes forward."). A risk of flight suggests an intentional and active effort to put oneself outside the purview of the court, whereas non-appearance can cover negligent and other non-intentional circumstances. *Id.* Further, if a case does not involve a "serious risk" of flight, then the government's request for detention fails at step one. *Id.* "The ordinary meaning of 'flee' [under (f)(2)(A)] suggests volitional conduct." *United States v. Ailon-Ailon*, 875 F.3d 1334, 1338 (10th Cir. 2017).

The Bail Reform Act's legislative history also makes clear that detention based on serious

risk of flight is only appropriate under "extreme and unusual circumstances."[6] For example, the case relied on in the legislative history as extreme and unusual enough to justify detention on the grounds of serious risk of flight involved a defendant who was a fugitive and serial impersonator who had failed to appear in the past, and had recently transferred over a million dollars to Bermuda. *See United States v. Abrahams*, 575 F.2d 3, 4 (1st Cir. 1978). The government must demonstrate that the risk of flight in a particular case rises to the level of extreme or unusual, and no such showing has been made here.

Moreover, the "[m]ere opportunity for flight is not sufficient grounds for pretrial detention." *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986). The Bail Reform Act authorizes detention "only upon proof of a likelihood of flight." *Id.* at 160. The "preponderance must, of course, go to the ultimate issue:  that no combination of conditions—either those set out in the Bail Reform Act itself or any others that the magistrate or judge might find useful—can 'reasonably' assure that the defendant will appear for trial." *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996).

In this case, there is no reason to believe that Mr. Hughes is a "serious" risk or that there are no conditions of release which would be sufficient to assure his appearance. Mr. Hughes will forfeit his passport at the hearing today and submit to location monitoring as well as the imposition

---

[6] *See Bail Reform Act of 1983: Rep. of the Comm. on the Judiciary*, 98th Cong. 48 (1983) ("Under subsection (f)(2), a pretrial Detention Hearing may be held upon motion of the attorney for the government or upon the judicial officer's own motion in three types of cases. . . . [T]hose [types] involving . . . a serious risk that the defendant will flee . . . *reflect the scope of current case law that recognizes the appropriateness of denial of release in such cases*.") (emphasis added) (citing *United States v. Abrahams*, 575 F.2d 3, 8 (1st Cir. 1978)—which held that only a "*rare case of extreme and unusual circumstances . . .* justifies pretrial detention"—as representing the "current case law"); *see Gavino v. McMahon*, 499 F.2d 1191, 1995 (2d Cir. 1974) (holding that in noncapital case defendant is guaranteed the right to pretrial release except in "extreme and unusual circumstances"); *United States v. Kirk*, 534 F.2d 1262, 1281 (8th Cir. 1976) (holding that bail can only be denied "in the exceptional case").

of a third-party custodian. He will confine himself to his home to the fullest extent the court concludes is appropriate.

On the facts of this case, the government not demonstrated that Mr. Hughes poses a risk of flight, and a defendant should not be detained as a "serious risk" of flight when the risk of non-appearance can be mitigated by conditions of release. The only defendants who qualify for detention under § 3142(f)(2)(A) are those who are "[t]rue flight risks"—defendants the government can prove are likely to willfully flee the jurisdiction with the intention of thwarting the judicial process. The government has not met its burden to seek detention of Mr. Hughes as a "serious risk of flight" and, as stated below, there are conditions that can reasonably ensure his appearance at court.

## V.    The § 3142(g) factors support release

### A.    The Nature and Circumstances of the Offense

The Indictment charges Mr. Hughes with distribution of child pornography. While the charges and allegations are undoubtedly serious, there is no evidence that Mr. Hughes engaged in any violence toward any minor or engaged in anything other than fantasizing with an adult. The allegations all stem from a conversation with an undercover officer. There is no allegation of any improper contact with any minor child. There is no allegation of any attempted direct contact with any minor child. Mr. Hughes' current detention stems from one single video sent only at the UC's request.

### B.    The Weight of the Evidence

The weight of the evidence does not provide clear and convincing evidence that Mr. Hughes would be a danger to the community or a serious risk of flight if released. "Even overwhelming evidence of guilt would not, alone, meet [the clear and convincing test]." *United States v. Taylor*, 289 F. Supp. 3d 55, 66 (D.D.C. 2018). The evidence is strong that Mr. Hughes

engaged in conversations with a UC and sent them a video that appears to depict a minor. But given all the allegations rest on a single video, the evidence to support pre-trial detention is lacking.

C.      *The History and Characteristics of Mr. Hughes*

As described above, Mr. Hughes has lived in the D.C. area for a long time. He built his life here and has no intention or desire to be elsewhere. His wife and child are here. His job is here. In fact, he has every reason to remain to fight this case.

Additionally, Mr. Hughes has no criminal history, let alone a history of dangerousness or failing to comply with court supervision. As suggested below, Mr. Hughes will be on electronic monitoring if released and under the supervision of a reliable, trustworthy third-party custodian. Mr. Hughes has been gainfully employed through his adult life and will continue to support himself.[7] Obviously, he will be severely limited in his ability to work while on home incarceration without access to the internet. He nonetheless will seek potential employment while his case is pending. More crucially, he wishes to rebuild his life after these allegations to regain the trust and support of his family. Both the safety of the community and his appearance at court can be reasonably assured with these conditions.

Mr. Hughes' history and characteristics do not provide any support for a finding that he is a serious risk of flight or a danger to the community. There are conditions that will reasonably assure his appearance and Mr. Hughes must be released.

D.      *The Nature and Seriousness of the Danger to Any Person or the Community Posed by Mr. Hughes' Release*

The government has not and cannot provide any evidence, let alone clear and convincing evidence, to support a finding that Mr. Hughes would be a danger to the community if released.

---

[7] Mr. Hughes is not terminated from his employment and is permitted to return to his employment; however, he will not work if released given home confinement and lack of use of the internet.

First, the dangerousness analysis "does not turn on any generalized, backward-looking assessment" of the offender or the crime. *Munchel*, 991 F.3d at 1286 (Katsas, J., concurring). "Instead, it turns on a specific, forward looking assessment of whether" the individual "currently pose[s] an unmitigable threat to public safety." *Id*. The government has not and cannot provide specific evidence to support a finding that Mr. Hughes poses an *unmitigable* threat to public safety.

A relevant comparison to Mr. Hughes' situation comes from *United States v. Urena.* In that case, the defendant messaged with an undercover officer for several days and arranged to meet up with the officer and a fictitious minor, but did not actually follow through with the meeting. Affidavit In Support of a Criminal Complaint & Arrest Warrant, *Urena,* No. 1:25-cr-344, doc. 1. Over the course of their conversation, *Urena* sent five files containing child pornography to the UC. *Id.* The facts are nearly identical to Mr. Hughes', except that Mr. Hughes sent only one file. *Urena* was released from custody under conditions sufficient to mitigate any further risk he might pose, including location monitoring, home incarceration, and steps to remove the defendant's access to internet-capable devices. *Id*. at doc. 11. Mr. Hughes may be released under similar conditions that would prevent him from posing any danger to the community.

The government may argue that Mr. Hughes could commit another crime if he had access to electronic devices during his pretrial release. Mr. Hughes' proposed conditions of release specifically deal with this concern, by depriving his access to devices and requiring that his family maintain the security of their devices by changing passcodes and keeping them locked up or with them when they are not in the home. There is no evidence that Mr. Hughes would refuse to comply with these specific conditions of release. Without access to the internet or electronic devices, the government's concerns about dangerousness evaporate.

Further, having now been arrested and detained for his conversation with the UC, it is

extraordinarily unlikely that Mr. Hughes will ever have be granted the privacy and presumption of good faith he was previously afforded by his family. Unlike in the past, they will now be closely monitoring his behavior for any signs of deception. If Mr. Hughes seeks to access the internet or violate his release conditions in any way, his custodian will know, and they will report him.

The government has not provided sufficient evidence for the Court to find that no combination of conditions could reasonably ensure the safety of the community and Mr. Hughes' appearance at court, so he must be released.

**VI.    Statistics Showing that It Is Extremely Rare for Defendants on Bond to Flee or Recidivate Demonstrate that Mr. Hughes Does Not Pose a Serious Risk of Flight or Danger to the Community**

In this case, this Court can be guided by Administrative Office of the Courts' statistics showing that nearly everyone released pending trial appears in court and does not reoffend. In fact, in 2019, 99% of released federal defendants nationwide appeared for court as required and 98% did not commit new crimes on bond.[8] Significantly, this near-perfect compliance rate is equally evident in federal districts with very high release rates and those with very low release rates.[9] Even in districts that release two-thirds of all federal defendants on bond, fewer than 1% fail to appear in court and just over 2% are rearrested while released.[10] The below chart reflects these data:

---

[8] AO Table H-15 (Dec. 31, 2019), *available at* Mot. for Bond, *United States v. Rodriguez*, No. 19-CR-77 (E.D. Wis. Apr. 2, 2020), ECF No. 41, Ex. 1, archived at https://perma.cc/LYG4-AX4H (showing a nationwide failure-to-appear rate of 1.2% and a rearrest rate of 1.9%).

[9] The districts with the highest and lowest release rates were identified using the version of AO Table H-14A for the 12-month period ending December 31, 2019. *See* AO Table H-14A (Dec. 31, 2019), https://perma.cc/32XF-2S42. The failure-to-appear and rearrest rates for these districts were calculated using Exhibit 1, AO Table H-15. The districts with the lowest release rates in 2019 were, from lowest to highest, S.D. California, W.D. Arkansas, E.D. Tennessee, S.D. Texas, E.D. Missouri, N.D. Indiana, E.D. Oklahoma, W.D. Texas, W.D. North Carolina, C.D. Illinois; the districts with the highest release rates are, from lowest to highest, E.D. Michigan, E.D. Arkansas, D. New Jersey, E.D. New York, D. Maine, D. Connecticut, W.D. New York, W.D. Washington, D. Guam, D. Northern Mariana Islands. *See* AO Table H-14A.

[10] *See* AO Table H-15; AO Table H-14A.





**Federal Clients on Bond Rarely Flee or Recidivate (2019 Data)**

- ■ 10 Districts with Lowest Release Rates
- ■ 10 Districts with Highest Release Rates

## VII. Mr. Hughes Must Be Released Because There Are Conditions That Will Reasonably Assure Appearance and Safety

Mr. Hughes must be released because there are conditions that will reasonably assure the safety of the community and his appearance in court. A defendant cannot be detained "unless a finding is made that no release conditions 'will reasonably assure . . . the safety of the community'" and the defendant's appearance in court. *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (quoting 18 U.S.C. § 3142(e)). Here, the government has not carried its high burden of proving by clear and convincing evidence that there are no release conditions that will reasonably assure the safety of the community. *See id*. at 708 n.8. The government also has not proved by a preponderance of the evidence that there are no conditions that would reasonably assure Mr. Hughes' appearance in court. Thus, Mr. Hughes cannot be detained.

The following conditions of release under § 3142(c)(1)(B), and any other conditions the Court deems necessary, will reasonably assure Mr. Hughes' appearance in court and the safety of the community.

- • Turn over any passports and agree not to procure another passport;

13

- Home incarceration with electronic monitoring;

- Third party custodian – his spouse, who has no criminal record, and a history of university education and significant professional ties, and who works out of the home;

- No use of electronic devices or the internet in any form, – all contact with legal counsel will be by telephone or in-person with advance permission by pretrial services to travel to attorney meetings;

   o All access of electronic devices will be monitored by the third-party custodian;

- No contact with children, but for his eighteen-month-old son and then only with the approval and in the presence of the son's mother;

- Remain in the District of Columbia, unless for verified court, pretrial services, legal, or medical appointments, which must be approved in advance by pretrial services;

- Report on a "regular basis" to PTS or some other agency as directed, *id*. § 3142(c)(1)(B)(vi);

- Refrain from possessing "a firearm, destructive device, or other dangerous weapon," *id*. § 3142(c)(1)(B)(viii);

- Refrain from "excessive use of alcohol," *id*. § 3142(c)(1)(B)(ix); and

- Refrain from "any use of a narcotic drug or other controlled substance . . . without a prescription," *id*. § 3142(c)(1)(B)(ix).

Because there are conditions of release that will reasonably assure Mr. Hughes' appearance in court and the safety of the community, he must be released.

## VIII.  Conclusion

For the foregoing reasons, Mr. Hughes respectfully requests that this Court release him with conditions.

Respectfully submitted,

/s Edward J. Ungvarsky
Edward J. Ungvarsky, Bar No. 459034
Ungvarsky Law, PLLC
421 King Street, Suite 505
Alexandria, VA 22314
DC : 202 546 1500

14

VA : 571 207 9710
Cell : 202 409 2084
Email : ed@ungvarskylaw.com
Counsel for Daniel Hughes

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Response and Memorandum for Bond was served on the government, via electronic filing, on this 28th day of July, 2026.

/s/ Edward J. Ungvarsky
Edward J. Ungvarsky

15